**Rollin Lee SPENCER, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 10–533 C.

United States Court of Federal Claims.

April 14, 2011.

---

44.  *Id.*

45.  *Id.*

350

Rollin Lee Spencer, Yazoo City, MS, pro se.

Amanda L. Tantum, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge.

Before the court is plaintiff's application to proceed *in forma pauperis* and defendant's motion for summary dismissal of a *pro se* complaint ("motion for summary dismissal").[1] Defendant moves, pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss the complaint because plaintiff fails to articulate a claim cognizable in Court of Federal Claims. The court grants plaintiff's application to proceed *in forma pauperis*. Nevertheless, the court determines that the complaint is frivolous pursuant to 28 U.S.C. § 1915(e)(2) and that it lacks jurisdiction over the allegations set forth therein. For the reasons set forth below, the court grants defendant's motion for summary dismissal.

### I. FACTUAL BACKGROUND[2]

In September 2007, plaintiff was indicted on two counts of illegal possession of a firearm or ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and one count of criminal forfeiture pursuant to 18 U.S.C. § 924(d)(1).[3] *See* Indictment 2–3, 5–6, 8, *Spencer*, ECF No. 2; *see also* Compl. 1

1. On August 9, 2010, plaintiff sent a letter dated February 8, 2010, to the clerk of the United States Court of Federal Claims ("Court of Federal Claims"). The clerk treated the letter as a complaint, designated the nature of the suit as "unjust conviction and imprisonment," and filed it. Defendant correctly construed plaintiff's letter as a complaint to which its motion for summary dismissal is addressed. The court similarly construes plaintiff's letter as a complaint.

2. The court derives the details of plaintiff's criminal proceedings from various documents filed in *United States v. Spencer*, No. 1:07–cr–00005–JWS (D.Alaska) ("*Spencer*").

3. Suzanne Denise Rollier, whom plaintiff identifies as his wife, Compl. 1, was also indicted on one count of possession of firearms by an illegal or unlawful alien in violation of 18 U.S.C. §§ 922(g)(5)(A), 924(a)(2), and one count of criminal forfeiture pursuant to 18 U.S.C. § 924(d)(1), Indictment 4–7, *Spencer*, ECF No. 2.

(stating that plaintiff and his wife "were arrested upon the waters of Southeast Alaska" by state and city law enforcement officers and that "no FEDERAL LAWENFORCEMENT [sic] Officers nor Federal Agents were in volved [sic]"). Prior to his arrest in Alaska, plaintiff had been convicted of sexual abuse in the first degree in Oregon. Indictment 2, *Spencer*, ECF No. 2. Following a jury trial, plaintiff was found guilty on both counts of possession of a firearm or ammunition by a felon. *See* Special Verdict—Count 2, *Spencer*, ECF No. 100; Special Verdict—Count 1, *Spencer*, ECF No. 99. The United States District Court for the District of Alaska ("District Court of Alaska") ruled in favor of the government on the forfeiture count. *See* Minutes of Proceedings, *Spencer*, ECF No. 95. Plaintiff received and is currently serving a prison sentence of 120 months. *See* Judgment in a Criminal Case, *Spencer*, ECF No. 157. Upon completion of his sentence, plaintiff is subject to three years of supervised release. *See id.*

According to plaintiff, the District Court of Alaska "d[id] not ... honor its own rules" when it allegedly deprived him of discovery during his criminal proceeding and any proceedings related to his "Tort Claim" that "has been under investigation...." Compl. 1. Plaintiff claims that he submitted "Affidavits, Motions, and Petitions" to the United States Attorney for the District of Alaska, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit"), and the United States Court of International Trade ("Court of International Trade"), but he asserts that he has never received any response. *Id.* Plaintiff alleges that the United States breached a purported "fiduciary duty" by enacting "Codes, Policies, and Laws" that are "not for the Private Person...." *Id.* According to plaintiff, the United States has

violated the Uniform Commercial Code ("UCC"), and its "Agents and Agencies" have taken "Private Personal Property without just compencation [sic]." *Id.* Plaintiff requests that the court provide a "hearing on this subject." [4] *Id.*

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

Plaintiff submitted an application to proceed *in forma pauperis*. Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104–134, 110 Stat. 1326 (1996) (codified in relevant part at 28 U.S.C. § 1915 (2006)), in order "to curtail inmate litigation," *Floyd v. U.S. Postal Serv.*, 105 F.3d 274, 275 (6th Cir.1997), *superseded by rule on other grounds as stated in Callihan v. Schneider*, 178 F.3d 800 (6th Cir. 1999). Section 1915 provides, in part:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.[5] Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the

---

**4.** In his response to defendant's motion for summary dismissal, plaintiff seeks an order authorizing him to subpoena the Attorney General of the United States and requests that the court direct defendant to respond to the complaint. Pl.'s Resp. 6–7. Plaintiff's first request is denied, and plaintiff's second request is denied as moot in light of the instant ruling.

**5.** While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the

court has jurisdiction to grant or deny an application to proceed *in forma pauperis*. *See* 28 U.S.C. § 2503(d) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see also Matthews v. United States*, 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia*, the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

6–month period immediately preceding the filing of the complaint or notice of appeal obtained from the appropriate official of each prison at which the prisoner is or was confined.[6]

28 U.S.C. § 1915(a)(1)–(2) (footnotes added). Section 1915(b) addresses requirements for prisoners bringing a civil action or filing an appeal and contains mandatory language requiring the payment of filing fees:

> (b)(1) Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, *the prisoner shall be required to pay the full amount of a filing fee.* The court *shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee* of 20 percent of the greater of—
>
> > (A) the average monthly deposits to the prisoner's account; or
> >
> > (B) the average monthly balance in the prisoner's account for the 6–month period immediately preceding the filing of the complaint or notice of appeal.
>
> (2) After payment of the initial partial filing fee, the *prisoner shall be required to make monthly payments* of 20 percent of the preceding month's income credited to the prisoner's account.

*Id.* § 1915(b)(1)–(2) (emphasis added). Thus, "[i]f a prisoner cannot pay the filing fee immediately upon submission of the complaint," partial payment is permitted "with required subsequent installment payments made from the prisoner's account established with his or her custodian." *Brown v. United States,* 88 Fed.Cl. 795, 798 (2009). Furthermore, notwithstanding any filing fee, or portion thereof, that may have been paid, section 1915(e) requires the court to dismiss a case at any time if it determines that (1) an "allegation of poverty is untrue," (2) the action is "frivolous or malicious," (3) the action "fails to state a claim on which relief may be

granted," or (4) the action "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

■ By enacting section 1915, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Brown,* 88 Fed.Cl. at 330 (quoting *Denton v. Hernandez,* 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992)). As the Sixth Circuit noted, the "emphasis of the [PLRA] is prison litigation, not pauper litigation." *Floyd,* 105 F.3d at 275. It further explained:

> [N]owhere in the legislative history of the PLRA is there a modicum of evidence that Congress intended to prevent indigent non-prisoners from proceeding in forma pauperis in the federal courts. To the contrary, *the legislation was enacted to require only prisoners to pay the entire sum of their fees and costs.* Congress expressly wanted to prevent "convicted criminals" from getting "preferential treatment" and to force prisoners to face the same "economic downside" as the "average law-abiding" citizen.

*Id.* at 276 (emphasis added) (citation omitted). Accordingly, section 1915(b) "is restrictive and requires that *only a prisoner pay the full filing fees.* No mention of other individuals is made in this paragraph. Thus, *the provision segregates prisoner litigation from legal actions brought by non-inmate indigent litigants." Id.* (emphasis added). The requirements of section 1915(b) are reflected in the "Supplemental In Forma Pauperis Form for Prisoners" utilized, for example, by the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), which instructs a prisoner to acknowledge and consent to the withdrawal of funds from

---

**6.** The court notes that section 1915(a)(1) utilizes both the terms "person" and "prisoner," which "raises the issue of whether it applies to both prisoners and non-prisoners." *Hayes v. United States,* 71 Fed.Cl. 366, 366 (2006). This court has previously held that "the right to petition a federal court to proceed *in forma pauperis* applies to both prisoners and non-prisoners." *Id.*

at 367. In *Floyd,* the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") analyzed the PLRA's legislative history, explaining that the PLRA "was applicable only to prisoners" but that Congress "did not intend to prevent a non-prisoner from being able to proceed in forma pauperis in federal court." 105 F.3d at 276.

the prisoner's trust account in order to pay the appellate filing fee in its entirety.[7]

■ In his application to proceed *in forma pauperis*, plaintiff indicates, under penalty of perjury, that he does not have any property of value, and he does not have any other asserts. *See* Pl.'s Appl. Proceed *In Forma Pauperis* 2. Although plaintiff indicates that his last date of employment was in 2007, he fails to include the amount of his salary and monthly wages, as required in the application. *See id.* at 1. He also represents that he received no monies from any source within the past twelve months, *see id.* (representing that plaintiff received no monies from any business; rent payments, interest, or dividends; pensions, annuities, or life insurance payments; gifts or inheritances; or "[a]ny other sources"), though the "Inmate Statement" accompanying his application indicates that plaintiff received at least two deposits from sources other than his prison employment.[8] Nevertheless, the court grants plaintiff's application to proceed *in forma pauperis*.

Although the court has granted plaintiff's application to proceed *in forma pauperis*, section 1915(b)(1), as discussed above, "provides that a court must ultimately collect a full filing fee from a prisoner, and, where possible, must collect an initial portion of the fee up front." *Hagan v. Rogers*, 570 F.3d 146, 155 (3d Cir.2009). The "procedures by which a prisoner shall make monthly payments against the balance of the fee," *id.*, are

set forth in section 1915(b)(2), also discussed above. Pursuant to section 1915(b)(1), plaintiff shall be assessed an initial partial filing fee comprising twenty percent of the greater of (1) the average monthly deposits into his account, or (2) the amount representing the average monthly balance in plaintiff's account for the six-month period immediately preceding the filing of his complaint. Thereafter, plaintiff shall be required to make monthly payments of twenty percent of the preceding month's income credited to his account. The agency having custody of plaintiff's account shall forward payments from plaintiff's account to the clerk of the Court of Federal Claims each time the account balance exceeds $10.00 and until such time as the filing fee is paid in full.

## III. LEGAL STANDARDS

### A. *Pro Se* Plaintiffs

■ The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct.Cl.1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements."

7. Specifically, the form requires that the prisoner request and authorize the agency holding the prisoner in custody to furnish a certified copy of the statement of the prisoner's trust fund account or institutional equivalent for the past six months. It also requires that the prisoner sign the following statement:

> I further request and authorize the agency holding me in custody to calculate and disburse funds from my trust fund account (or institutional equivalent) in the amounts specified by 28 U.S.C. § 1915(b). This authorization is furnished in connection with an appeal, and I understand that the total appellate filing fees for which I am obligated are $450 or $455. I also understand that these fees will be debited from my account regardless of the outcome of my appeal. This authorization shall apply to any other agency into whose custody I may be transferred.

Form 6A, "Supplemental In Forma Pauperis Form for Prisoners," *available at* http://www.cafc.uscourts.gov/rules-of-practice/forms.html (last visited Apr. 13, 2011). The Ninth Circuit requires that prisoners furnish "a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts." "Affidavit Accompanying Motion for Permission to Appeal In Forma Pauperis," *available at* http://www.ca9.uscourts.gov/forms/ (last visited Apr. 13, 2011).

8. The "Inmate Statement," which lists transactions for the period beginning November 10, 2009, and ending July 13, 2010, appears to have been printed from an Internet website. Although the "Inmate Statement" is not certified, the court is satisfied that this submission complies with the statutory requirement as an institutional equivalent. *See* 28 U.S.C. § 1915(a)(2).

*Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States,* 59 Fed.Cl. 497, 499 (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements), *aff'd,* 98 Fed.Appx. 860 (Fed. Cir.2004). As the Court of Federal Claims stated in *Demes v. United States,* "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." 52 Fed.Cl. 365, 369 (2002).

## B. Subject Matter Jurisdiction

■ Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see also Matthews,* 72 Fed.Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case"). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). The parties or the court *sua sponte* may challenge the court's subject matter jurisdiction at any time. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

■ The ability of the Court of Federal Claims to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). A waiver of immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

■ Tucker Act jurisdiction is based upon actions involving the following: (1) contracts with the United States; (2) illegal exactions of money by the United States; and (3) money-mandating constitutional provisions, statutes, regulations, or executive orders. *See United States v. Mitchell,* 463 U.S. 206, 212–18, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). The Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Because the Tucker Act "is merely jurisdictional, ... grant of a right of action must be made with specificity." *Id.* at 400, 96 S.Ct. 948. As the Federal Circuit explained,

> [i]n determining whether the Court of Federal Claims has jurisdiction, all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source. There is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits.

*Jan's Helicopter Serv., Inc. v. FAA,* 525 F.3d 1299, 1309 (Fed.Cir.2008); *see also Ralston Steel Corp. v. United States,* 340 F.2d 663, 667–68 (Ct.Cl.1965) (holding that "a claimant who says he is entitled to money from the United States because a statute or a regulation grants him that right, in terms or by implication, can properly come to the Court of Claims, at least if his claim is not frivolous, but arguable").

## C. Standard of Review

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction under RCFC 12(b)(1). It also moves to dismiss the complaint for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). When deciding a motion to dismiss based upon either ground, the court assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–19, 102 S.Ct. 2727, 73

L.Ed.2d 396 (1982); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed. Cir.2006).

The court's "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir.1999). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). If the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. *See McNutt,* 298 U.S. at 189, 56 S.Ct. 780. When ruling upon a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to decide any factual disputes. *See Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999); *Reynolds,* 846 F.2d at 747. If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews,* 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## IV. DISCUSSION

### A. The Court Lacks Jurisdiction Over Plaintiff's Frivolous Allegations

■ The United States Supreme Court has stated that a court may dismiss a claim as factually frivolous "only if the facts alleged are 'clearly baseless,' a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Denton,* 504 U.S. at 32–33, 112 S.Ct. 1728 (citations omitted) (quoting *Neitzke v. Williams,* 490 U.S. 319, 325, 327–28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *see also Moden v. United States,* 404 F.3d 1335, 1341–42 (Fed.Cir.2005) (construing "frivolous" as "insubstantial, implausible,

foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy"). A finding of factual frivolousness "is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible," and a determination that a claim is frivolous falls within the discretion of the trial court. *Denton,* 504 U.S. at 33, 112 S.Ct. 1728.

■ Plaintiff's allegations, which are devoid of merit and foreclosed by prior decisions, are frivolous, and they fall outside the jurisdiction of the Court of Federal Claims. First, plaintiff appears to assert claims against agents of the United States. The court's jurisdiction only includes claims against the United States, *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767 ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."), not claims against individual federal officials, *Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir.1997) (citing 28 U.S.C. § 1491(a)). Accordingly, to the extent that plaintiff's claims are directed against parties other than the United States, the court lacks jurisdiction.

■ Second, plaintiff appears to challenge the District Court of Alaska's discovery rulings or other courts' dispositions of his submissions. *See* Compl. 1 (claiming that the Ninth Circuit, the District Court of Alaska, and the Court of International Trade ignored his letters because they "do not have jurisdiction to hear this case or have refused to answer for some other reason"). The court, however, cannot review any other court's determination. "[T]he Court of Federal Claims does not have jurisdiction to review the decisions of district courts or the clerks of district courts relating to proceedings before those courts." *Joshua v. United States,* 17 F.3d 378, 380 (Fed.Cir.1994). Furthermore, the Court of Federal Claims lacks jurisdiction to adjudicate any claims under the federal criminal code. *See id.* at 379. Therefore, to the extent that the complaint can be construed as asserting claims that challenge—or express disagreement with—plaintiff's crimi-

nal conviction and sentence, the court lacks jurisdiction.

■ Third, plaintiff alleges that a "Tort Claim is and has been under investigation" and requests a hearing "on this subject." Compl. 1. The court construes the term "subject" as referencing both plaintiff's apparent tort claim and claim that the government purportedly breached its "Fiduciary Duty." *See id.* Tort-based claims fall outside the court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ... for liquidated or unliquidated damages in cases *not sounding in tort.*" (emphasis added)). Claims alleging a breach of fiduciary duty sound in tort. *See Regents of the Univ. of N.M. v. Knight,* 321 F.3d 1111, 1116 (Fed.Cir.2003) (classifying a breach of fiduciary duty as a tort); *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1411 (Fed.Cir.1996) (same). Accordingly, to the extent that the complaint can be construed to allege a breach of fiduciary duty and any other tort-based claims,[9] the court lacks jurisdiction.

■ Fourth, plaintiff claims that the United States "does not even abide by the U.C.C.'s [sic]." Compl. at 1. The UCC "is a model code—it does not itself have the force of law...." *Linear Tech. Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1048 (Fed.Cir.2001). It is unclear how the UCC has any relevance to the occurrences described in the complaint. Nevertheless, to the extent that plaintiff brings claims based upon the UCC, the court lacks jurisdiction. *See Clark v. United States,* 116 Fed.Appx. 278, 279 (Fed.Cir.2004) (per curiam) (affirming the dismissal of claims alleging violations of the UCC because its provisions do not mandate the payment of money damages).

■ Fifth, plaintiff contends that no federal law enforcement officers were involved

in his arrest and that "no one has answered any of [his] claims" related to his criminal case. Compl. at 1. As previously noted, the clerk designated the nature of the suit as one alleging an unjust conviction and imprisonment. *See supra* note 1. The Court of Federal Claims has jurisdiction to award damages for unjust conviction pursuant to 28 U.S.C. § 1495, but only if the conviction has been set aside by another court. *See* 28 U.S.C. § 2513(a)(1) ("Any person suing under section 1495 ... must allege and prove that ... [h]is conviction has been reversed or set aside...."); *see also Ekberg v. United States,* 76 F.Supp. 99, 100–01 (Ct.Cl.1948) (requiring that a person prove "not to have been guilty of a crime for which he was convicted and imprisoned"). Such is not the case here. Plaintiff's conviction has neither been reversed nor set aside, and plaintiff has not presented any certificate of innocence or pardon from the District Court of Alaska. *See* 28 U.S.C. § 2513(b) (requiring that "[p]roof of the requisite facts shall be by a certificate of the court or pardon wherein such facts are alleged to appear"). Consequently, to the extent that the complaint can be construed to allege an unjust conviction and imprisonment, the court lacks jurisdiction.

Finally, plaintiff asserts that "Agents and Agencies" of the United States "have taken Private Personal Property without just compencation [sic]." Compl. 1. The court construes this allegation to reference personal property that the government seized from plaintiff incident to his arrest or subsequent incarceration. *See* Minutes of Proceedings, *Spencer,* ECF No. 95 (indicating that the court found in favor of the government on one forfeiture count). Although "the distinction between a dismissal for lack of jurisdiction over a frivolous takings claim, and a dismissal for failure to state a takings claim upon which relief may be granted, is a fine one," *Steward v. United States,* 80 Fed.Cl.

---

9. For example, to the extent that the complaint can be construed to assert an action in replevin, the court lacks jurisdiction. Replevin is a common law action "for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it." *Black's Law Dictionary* 1302 (7th ed. 1999). Actions in replevin are "classified as tort actions...." 66 Am.Jur.2d *Replevin* § 1 (2001); *accord McGee v. McGee,* 974 P.2d 983, 987 (Alaska 1999) (referring to a replevin action as a "tort action" or "tort suit").

540, 544 (2008), the court determines that it lacks jurisdiction over plaintiff's purported takings claim.

■ The Court of Federal Claims possesses jurisdiction over nonfrivolous takings claims against the United States. *See Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) ("[T]he 'just compensation' required by the Fifth Amendment has long been recognized to confer upon property owners whose property has been taken for public use the right to recover money damages from the government."); *see also Moden*, 404 F.3d at 1341 ("[T]o the extent [a plaintiff has] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper."). The Fifth Amendment to the United States Constitution prohibits the federal government from taking private property for public use without paying just compensation. The Tucker Act, however, does not create jurisdiction for a party contesting the propriety of a taking. *See Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 898–99 (Fed.Cir. 1986). Therefore, a claimant "must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed.Cir. 1993). Plaintiff cannot invoke the court's Tucker Act jurisdiction because he challenges the validity of the government action that served as the basis for his purported takings claim. *See* Compl. 1 (questioning the application of the "Codes, Policies, and Laws that have been passed" to a "Private Person").

■ Additionally, the circumstances giving rise to plaintiff's purported takings claim, *i.e.*, the forfeiture of his property as part of his criminal prosecution and conviction on two counts of illegal possession of a firearm and ammunition by a felon, *see* Minutes of Proceedings, *Spencer*, ECF No. 95, cannot serve as the basis for a compensable taking under the Fifth Amendment. Plaintiff, a convicted sex offender, was prohibited from, among other things, possessing firearms or ammunition. The government confiscated plaintiff's firearms and ammunition pursuant to its police power. "Property seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed.Cir. 2008); *see also Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332 (Fed.Cir.2006) (holding that "[t]he government's seizure, retention, and damaging of the property did not give rise to an actionable claim for a taking ... because 'items properly seized by the government under its police power are not seized for "public use" within the meaning of the Fifth Amendment' " (quoting *Seay v. United States*, 61 Fed.Cl. 32, 35 (2004))). Consequently, plaintiff has failed to make a nonfrivolous allegation that he is within the class of plaintiffs entitled to just compensation for the taking of private property for a public use pursuant to the Fifth Amendment. *See Jan's Helicopter Serv., Inc.*, 525 F.3d at 1309.

## B. Dismissal Is Warranted Pursuant to RCFC 12(b)(1)

■ Typically, frivolous claims are dismissed for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6). *See Lewis v. United States*, 70 F.3d 597, 602–03 (Fed.Cir.1995) (discussing dismissals for want of jurisdiction and for failure to state a claim and noting that the usual course is to dismiss frivolous claims for failure to state a claim, which is a final adjudication on the merits). However, "the Supreme Court has not overturned the line of cases countenancing the dismissal of frivolous claims on jurisdictional grounds" so long as "jurisdictional dismissals for frivolousness [are] 'confin[ed]' to cases 'that are very plain.' " *Id.* at 603–04 (quoting *Hart v. B.F. Keith Vaudeville Exch.*, 262 U.S. 271, 274, 43 S.Ct. 540, 67 L.Ed. 977 (1923) (second alteration in original)); *see also Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (noting that "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim ... is wholly insubstantial and frivolous"). Here, plaintiff's "starkly frivolous" allegations, *Lewis*, 70 F.3d at 604, warrant dismissal on jurisdictional grounds, *see Stephanatos v. United States*, 306 Fed.Appx. 560, 563 (Fed.Cir.2009) (affirming the dis-

missal of certain "claims that are obviously frivolous and without merit" pursuant to RCFC 12(b)(1), rather than RCFC 12(b)(6)). Accordingly, defendant's motion for summary dismissal is granted pursuant to RCFC 12(b)(1).[10]

### C. Transfer to a Federal District Court Is Inappropriate

Plaintiff requests that the court "please give [him] the address and names of the proper Civil Authorities and or Military Authorities, so [he] can write and start the process, before [he] go[es] to the International court" in the event that the court "does not wish to hear this case...." Compl. 2. "When a court lacks jurisdiction, the ordinary course is ... to dismiss...." *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999). Nevertheless, a court must transfer a claim over which it lacks jurisdiction to a court where it could have been brought under certain circumstances:

> Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought.[11]

28 U.S.C. § 1631 (footnote added). Thus, in order to transfer a case, the court must determine that (1) it lacks subject matter jurisdiction, (2) at the time the case was filed, the case could have been brought in the transferee court, and (3) transfer is in the interest of justice. *Id.; United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1364 n. 5, 1374 (Fed.Cir.1983). A decision to transfer rests within the sound discretion of the transferor court, and the court may decline to transfer the case "[i]f such transfer 'would nevertheless be futile given the weakness of plaintiff's case on the merits.'" *Faulkner v. United States*, 43 Fed.Cl. 54, 56 (1999) (quoting *Siegal v. United States*, 38 Fed.Cl. 386, 390 (1997)).

"The basic test ... for determining if a case should be transferred is whether it would be in 'the interest of justice' to do so." *Busby School of N. Cheyenne Tribe v. United States*, 8 Cl.Ct. 588, 595 (1985). According to the Federal Circuit, "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed.Cir.1987) (citing *Zinger Constr. Co. v. United States*, 753 F.2d 1053, 1055 (Fed.Cir. 1985)). As explained above, plaintiff's allegations are frivolous. Transfer of this action to a federal district court is therefore not in the interest of justice.

### V. CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED**:

1. Plaintiff's application to proceed *in forma pauperis* is **GRANTED**. Plaintiff shall be assessed the court filing fee in accordance with the standards set forth in 28 U.S.C. § 1915.

2. The complaint is **FRIVOLOUS** pursuant to 28 U.S.C. § 1915(e)(2), and the court lacks jurisdiction over the allegations set forth therein.

3. Defendant's motion for summary dismissal is **GRANTED**. The clerk is directed to **DISMISS WITHOUT PREJUDICE** the complaint and to enter judgment accordingly.

No costs.

---

**10.** In light of its jurisdictional ruling, the court need not address the arguments raised by defendant in support of dismissal pursuant to RCFC 12(b)(6).

**11.** Under 28 U.S.C. § 610, the term "courts" includes "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade."